## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| _____ ) <br> ) <br> **TESLA, INC.,** ) <br> ) <br> **Plaintiff,** ) <br> ) <br> **v.** ) <br> ) <br> **UNITED STATES,** ) <br> **OFFICE OF THE UNITED STATES TRADE** ) <br> **REPRESENTATIVE; ROBERT E. LIGHTHIZER,** ) <br> **U.S. TRADE REPRESENTATIVE; U.S. CUSTOMS AND** ) <br> **BORDER PROTECTION; MARK A. MORGAN,** ) <br> **ACTING COMMISSIONER OF U.S. CUSTOMS AND** ) <br> **BORDER PROTECTION,** ) <br> ) <br> **Defendants.** ) <br> ) <br> _____ ) | **Court No:  20-03142** |

### COMPLAINT

Through its attorneys, Plaintiff, Tesla, Inc. alleges and states as follows:

1.     Plaintiff brings this action to contest Defendants' unlawful imposition and collection of certain duties on its imported merchandise from the People's Republic of China pursuant to Section 301(b) of the Trade Act of 1974 ( "Trade Act"), 19 U.S.C. § 2411(b).  *See Notice of Modification of Section 301 Action:  China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 47,974 (U.S. Trade Rep. Sept. 21, 2018) ("List 3 Notice"); *Notice of Modification of Section 301 Action:  China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and*

*Innovation*, 84 Fed. Reg. 22,564 (U.S. Trade Rep. Aug. 20, 2019) ("List 4 Notice").[1]

Defendants' imposition and collection of the List 3 and List 4A duties are inconsistent with the

statute, violate the Administrative Procedure Act ("APA"), and are otherwise contrary to law.

2.     Plaintiff therefore requests that this Court declare void *ab initio* Defendants'

imposition of the List 3 and List 4A duties and order Defendants to refund, with interest, the List

3 and List 4A duties that Plaintiff has paid.

## JURISDICTION

3.     The Court has jurisdiction over this action contesting the imposition and

collection of the duties at issue pursuant to 28 U.S.C. § 1581(i)(1)(B), conferring exclusive

jurisdiction to this Court over any civil action against the United States, its agencies, or its

officers, arising out of any law providing for "tariffs, duties, fees, or other taxes on the

importation of merchandise for reasons other than the raising of revenue."

## STANDING

4.     Plaintiff Tesla, Inc. ("Tesla") is a U.S. importer of merchandise that has been or

will be subject to the additional *ad valorem* duties under List 3 and List 4A.

5.     Plaintiff has paid duties on merchandise included in List 3 and List 4A.

Defendants' imposition and collection of these duties is unlawful.  These unlawful duties,

---

[1] The Office of the U.S. Trade Representative ("USTR") refers to the duties contested in this action as "List 3" and "List 4", in light of the fact that USTR imposed a series of successive duties allegedly in connection to the same "action" taken pursuant to Section 301(b) of the Trade Act.  List 4A refers to duties imposed on September 1, 2019 pursuant to the List 4 Notice.  List 4B refers to duties that were scheduled to be imposed on December 15, 2019 pursuant to the List 4 Notice.  List 4B duties were never imposed.  The series of duties imposed is further described in the Statement of Facts, *infra*.

therefore, have affected adversely and aggrieved Plaintiff within the meaning of the APA, 5 U.S.C. § 702.  Accordingly, Plaintiff has standing to commence this action.  *See* 28 U.S.C. § 2631(i) ("Any civil action of which the Court of International Trade has jurisdiction . . . may be commenced in the court by any person adversely affected or aggrieved by agency action within the meaning of Section 702 of Title 5.").

## TIMELINESS

6.     This cause of action accrued, at the earliest, upon USTR's publication of the List 3 and List 4 notices imposing the List 3 and List 4A duties on September 21, 2018 and August 20, 2019.  Accordingly, this action is timely because Plaintiff commenced this action "in accordance with the rules of the court within two years after the cause of action first accrue[d]." 28 U.S.C. § 2636(i).

## RELEVANT LAW

7.     Section 301(b) of the Trade Act authorizes USTR to investigate whether a "an act, policy, or practice of a foreign country is unreasonable or discriminatory and burdens or restricts United States commerce."  19 U.S.C. § 2411(b).

8.     If USTR's finding is affirmative, Section 301(c)(1)(B) permits USTR to impose special duties on imports from the foreign country subject to investigation.  *Id.* § 2411(c)(1)(B). Section 304(a)(2)(B) requires USTR to determine whether to impose import restrictions in light of any affirmative determination within "12 months after the date on which the investigation is initiated."  *Id.* § 2414(a)(2)(B).  The Trade Act does not authorize USTR to increase or expand duties imposed under Section 301(b) outside of the 12-month time limit.

9.      In relevant part, Section 307(a)(1) of the Trade Act permits USTR to "modify or terminate" the action taken pursuant to Section 301(b) where "the burden or restriction on United States commerce . . . of the acts, policies, and practices, that are the subject of such action has increased or decreased," or where the action "is no longer appropriate." *Id.* § 2417(a)(1)(B), (C).

10.     Before modifying any action pursuant to Section 307, however, USTR must, *inter alia*, "provide opportunity for the presentation of views" of interested parties "affected by the proposed modification . . . concerning the effects of the modification . . . and whether any modification . . . of the action is appropriate." *Id.* § 2417(a)(2).  Modification, "as applied to any duty or other import restriction, includes the elimination of any duty or other import restriction." 19 U.S.C. § 2481(6).

11.     The authority granted by Section 307 to modify an action taken under Section 301(b) does not authorize USTR to impose entirely *new* duties.  Reading USTR's modification authority in Section 307(a) as a license to impose entirely new duties outside of the 12-month time limit envisioned in 304(a)(2)(B) would create an unintended and unauthorized loophole allowing USTR to circumvent the carefully calibrated, procedurally intricate process that Congress required for imposing duties pursuant to Section 301(b).

12.     When Congress intended to grant USTR the authority to include additional goods subject to an action taken pursuant to Section 301 *after* duties were imposed, it said so explicitly. For example, in the context of actions taken under Section 301(a), Congress referred to "taking further" action, or revising the action to "affect other goods" —not to "modifying" the action. *See* 19 U.S.C. § 2416(b)(1) ("the Trade Representative shall determine what further action the Trade representative shall take under section 2411(a) of this title.  For purposes of Section 2411

of this title, any such determination shall be treated as a determination made under section 2414(a)(1) of this title); *see also id.* § 2416(b)(2)(B) (where a country fails to implement "the recommendation made pursuant to a dispute settlement proceeding under the World Trade Organization, the Trade Representative shall periodically revise the list or action to affect other goods" of that country.).

## STATEMENT OF FACTS

### Initial Investigation and List 1 and 2 Duties

13.     On August 14, 2017, President Trump directed USTR to consider initiating an investigation pursuant to Section 301(b) of the Trade Act concerning China's laws, policies, practices and actions related to intellectual property, innovation, and technology.  *See Addressing China's Laws, Policies, Practices, and Actions Related to Intellectual Property, Innovation, and Technology*, 82 Fed. Reg. 39,007 (Aug. 17, 2017).

14.     USTR initiated the investigation into Chinese technology transfer and intellectual property practices on August 18, 2017.  *See Initiation of Section 301 Investigation; Hearing; and Request for Public Comments:  China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 82 Fed. Reg. 40,213 (Aug. 24, 2017).

15.     On March 22, 2018, USTR released its report announcing the results of its investigation.  *See* Office of the U.S. Trade Representative, *Findings of the Investigation into China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation Under Section 301 of the Trade Act of 1974* (Mar. 22, 2018).[2]  The report concluded

---

[2] USTR's report is available at https://ustr.gov/sites/default/files/ Section%20301%20FINAL.PDF.

that the investigated practices of the Chinese government are unreasonable and discriminatory and burden or restrict U.S. commerce.  *See id.* at 47.

16.     On March 22, 2018, USTR also published a "Fact Sheet" stating that "[a]n interagency team of subject matter experts and economists' estimates that China's policies result in harm to the U.S. economy of at least $50 billion per year."  Office of the U.S. Trade Representative, *Section 301 Fact Sheet* (Mar. 22, 2018).[3]  The Fact Sheet stated that USTR would "propose additional tariffs" of 25 percent *ad valorem* "on certain products of China, with an annual trade value commensurate with the harm caused to the U.S. economy resulting from China's unfair policies."  *Id.*

17.     On April 6, 2018 USTR published a *Notice of Determination and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 14,906 (April 6, 2018).  In the notice, USTR identified a list of products with a total value of approximately $50 billion on which it proposed to impose additional duties and set a period for comment and a public hearing on the proposed list.  *See id.* USTR stated that "[t]he value of the list is approximately $50 billion in terms of estimated annual trade revenue value for calendar year 2018.  This level is appropriate both in light of the estimated harm to the U.S. economy, and to obtain elimination of China's harmful acts, policies, and practices."  *Id.* at 14,907.

---

[3] USTR's Fact sheet is available at https://ustr.gov/about-us/policy-offices/press-office/fact-sheets/2018/march/Section-301-fact-sheet.

18.     After taking comment from interested parties, on June 20, 2018, USTR published *Notice of Action and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 28,710 (June 20, 2018), imposing an additional 25 percent *ad valorem* duty on approximately $34 billion in listed imports from China, which USTR refers to as "List 1" duties.  USTR stated that it had removed approximately $16 billion worth of imports from its proposed list in response to input from the public during the notice-and-comment process.  *See id.* at 28,712.  In light of the removal of certain products from the initial proposed list, USTR proposed an additional list of $16 billion in imports, stating that "[i]ncluding these tariff subheadings in the Section 301 action would maintain the effectiveness of a $50 billion trade action."  *Id.*

19.     On August 16, 2018, USTR published *Notice of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 40,823-24 (Aug. 16, 2018), imposing an additional 25 percent *ad valorem* duty on approximately $16 billion in imports from China.  USTR refers to these as "List 2" duties.  The August 16, 2018 notice reiterated that the List 2 duties would "maintain the effectiveness of a $50 billion trade action."  *Id.*

**List 3 Duties**

20.     In response to the List 1 and List 2 duties, China announced retaliatory duties on imports of U.S. products.  *See* U.S. Trade Representative, *Statement by U.S. Trade*

*Representative Robert Lighthizer on Section 301 Action* (July 10, 2018) ("Lighthizer July 10, 2018 Statement").[4]

21.     In response to China's retaliation, USTR proposed on July 17, 2018, to take "supplemental action," to impose duties of 10 percent *ad valorem* on approximately $200 billion in additional Chinese-origin products.  *Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301:  China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 33,608, 33,609 (July 17, 2018);  USTR set dates for public comment, a public hearing, and post-hearing rebuttal comments.  *See* Lighthizer July 10, 2018 Statement.

22.     Subsequently, USTR proposed "raising the level of the additional duty in the proposed supplemental action from 10 percent to 25 percent."  *Extension of Public* Comment *Period Concerning Proposed Modification of Action Pursuant to Section 301:  China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 38,760 (Aug. 7, 2018).  USTR also set new dates for the public hearing and changed the comment deadlines to make affirmative and rebuttal comments due on the same day.  *See id.* At the public hearing, held from August 20, 2018, through August 27, 2018, parties were limited to only five minutes of testimony.  Approximately 350 witnesses appeared at the hearing, and USTR received over 6,000 comments from the public.

23.     On September 17, 2018 President Trump announced that he had directed USTR to impose 10 percent additional duties on $200 billion of imports from China.  *See* The White

---

[4] Ambassador Lighthizer's July 10, 2018 statement is available at https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/july/statement-us-trade-representative.

House, *Statement from the President* (Sept. 17, 2018).[5]  President Trump claimed that the

additional duties were tied to "China's decision to "impose new tariffs in an effort to hurt the

United States economy," and acknowledged that "[w]e are taking this action today as a result of

the Section 301 process that the USTR has been leading for *more than 12 months*."  *Id.*

(emphasis supplied).

24.     USTR published the final list of the affected products subject to the additional

duties covering $200 billion in imports on September 21, 2018, commonly referred to as List 3.

*See* List 3 Notice, 83 Fed. Reg. at 47,974.  USTR's notice was issued more than 12 months after

the initiation of the investigation on August 24, 2017.  USTR did not provide any substantive

analysis of any of the more than 6,000 comments that it received or any of the testimony

provided by more than 350 witnesses, beyond stating that it had made certain adjustments to

List 3.  USTR also provided no substantive response to parties' comments regarding the adverse

effects of the proposed modification, nor did it provide any substantive explanation for rejecting

parties' views that the proposed modification was inappropriate.  *See id.*

25.     In the List 3 Notice, USTR claimed that "China's unfair acts, policies, and

practices include not just its technology transfer and IP polices referenced in the notice of

initiation in the investigation, but also China's subsequent defensive actions taken to maintain

those unfair acts, policies, and practices as determined in that investigation."  *Id.*  Therefore, in

the List 4 Notice, USTR conceded that it imposed additional duties based, at least in part, on

"unfair acts, policies, and practices" not subject to the underlying original investigation.  USTR

provided no explanation as to how the List 3 duties were commensurate with these additional

---

[5] President Trump's September 17, 2018 statement is available at
www.whitehouse.gov/briefings-statements/statement-from-the-president-4/.

alleged unfair acts, policies, and practices, or how the statute conferred USTR with the authority

to "modify" the Section 301(b) action based on acts, policies, and practices not identified or

addressed in the original investigation.

26.     In contrast to the analysis provided in the List 1 and List 2 Notices, USTR

provided no qualitative or quantitative analysis in the List 3 Notice demonstrating that its

imposition of the List 3 duties was commensurate with the alleged "increased burden" on U.S.

Commerce.  USTR also stated, in a conclusory manner, that Chinese retaliation made the

existing action no longer "appropriate."  *Id.*  However, USTR did not provide any substantive

analysis as to how the List 3 duties on an additional $200 billion in imports would render the

purported "modification" to the measure "appropriate."

27.     On May 9, 2019, USTR announced that it would increase the tariff rate applicable

to List 3 goods from 10 percent to 25 percent.  *See N*otice of Modification of Section 301 Action:

China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and

Innovation, 84 Fed. Reg. 20,459 (May 9, 2019).  The notice cited China's decision to "retreat

from specific commitments agreed to in earlier rounds" of negotiations as the basis for the

increase in the duty rate.  *Id.*   USTR did not seek public comment on the rate increase, and failed

to provide any explanation or analysis as the increased duties were commensurate with or

otherwise appropriate as a response to the "unfair acts, policies, and practices" identified in the

underlying USTR investigation.  *Id.*

**List 4 Duties**

28.     On May 17, 2019, USTR announced its intention to proceed with the

implementation on a fourth list of Section 301 duties on $300 billion in additional products.  *See*

*Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301:*

*China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and*

*Innovation*, 84 Fed. Reg. 22,564 (May 17, 2019).  USTR claimed that it was proposing to impose

the List 4 duties "[i]n light of China's failure to meaningfully address the acts, policies, and

practices that are subject to this investigation and its response to the current action being taken in

this investigation," even though the investigation had concluded on March 28, 2018, well over a

year prior to the notice.  *Id.*  USTR set a public hearing and invited comments on the proposed

List 4 duties.  *See id.*

29.     At the public hearing, held from June 17, 2019, through June 25, 2019, parties

again were limited to only five minutes of testimony.  Hundreds of witnesses appeared at the

hearing, and USTR received over 3,000 comments from the public.

30.     On August 20, 2019, USTR announced that it would implement duties of 10

percent *ad valorem* on approximately $300 million in List 4 goods in two phases, i.e., "List 4A

and List 4B."  List 4 Notice, 84 Fed. Reg. at 43,304.  USTR imposed *ad valorem* duties of 10

percent on approximately $120 billion, effective September 1, 2019.  *See id.*  List 4B, to become

effective on December 15, 2019, would impose duties of 10 percent *ad valorem* on the remaining

$180 billion worth of imports.  *See id.*  The August 20, 2019, List 4 Notice was published nearly

two years after the initiation of the investigation on August 24, 2017.  USTR provided no

substantive analysis of parties' comments or hearing testimony submitted in opposition to

imposition of the List 4 duties.

31.     USTR claimed in the List 4 Notice that "[t]he burden or restriction on United

States commerce of the acts, policies, and practices that are the subject of the Section 301 action

continues to increase." *Id.*  However, USTR provided no substantive analysis as to the extent of

the increase in the burden alleged, or whether the 10 percent *ad valorem* duties on $300 billion in

additional goods was proportional to the alleged increase.

32.     As it did in the List 3 Notice, USTR also claimed in the List 4 Notice that

"China's unfair acts, policies, and practices include not just its technology transfer and IP polices

referenced in the notice of initiation in the investigation, but also China's subsequent defensive

actions taken to maintain those unfair acts, policies, and practices as determined in that

investigation." *Id.*  USTR also pointed to China's alleged failure to meet commitments made

during trade negotiations, and alleged devaluation of the Chinese yuan. *See id.*  USTR provided

no explanation as to how the List 4 duties were commensurate with these additional alleged

unfair acts, policies, and practices, or how the statute conferred on USTR the authority to

"modify" the Section 301(b) action based on acts, policies, and practices not identified or

addressed in the original investigation.

33.     On August 30, 2019, USTR announced that it would increase the tariff rate

applicable to List 4A and List 4B goods from 10 percent to 15 percent. *See Notice of*

*Modification of Section 301 Action:  China's Acts, Policies, and Practices Related to Technology*

*Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 45,821 (Aug. 30, 2019).  USTR

stated in the August 30 notice that it was increasing the rate of duty because China responded to

USTR's announcement of the List 4 duties by imposing additional retaliatory duties on U.S.

imports. *See id.*  USTR also pointed to China's alleged failure to honor commitments made

during negotiations, and alleged devaluation of its currency. *See id.*

34.     On December 18, 2019, USTR published a notice in the Federal Register stating that it would "suspend indefinitely the imposition of additional duties of 15 percent on products of China covered by" List 4B.  *Notice of Modification of Section 301 Action:  China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 69,447 (Dec. 18, 2019).  List 4B remains suspended as of the date of filing of this Complaint.

35.     On January 22, 2020, USTR reduced the duties applicable to List 4A goods from 15 percent to 7.5 percent.  *See Notice of Modification of Section 301 Action:  China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 85 Fed. Reg. 3,741 (Jan. 22, 2020).  The 7.5 percent duties applicable to List 4A remains in effect as of the date of filing of this Complaint.

## STATEMENT OF CLAIMS

## COUNT I:  DECLARATORY JUDGMENT

36.     Paragraphs 1 through 35 of this Complaint are incorporated herein by reference.

37.     The Court may "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).

38.     USTR failed to articulate a rational connection between the imposition of the Section 301 duties on Chinese products covered by List 3 and List 4A and the acts or policies found in its report to "burden or restrict" U.S. commerce, as required by 19 U.S.C. § 2411(b)(1).

39.     USTR failed to take action to impose duties on List 3 and List 4 products from China within the 12-month period required by 19 U.S.C. § 2414(a)(1)(B) and (2)(B).

40.     USTR failed to articulate any basis—much less a reasoned basis—for its finding that the burden on U.S. commerce from the investigated unfair policies or practices increased as a result of China's reaction to the Section 301 tariffs.  USTR may not increase the duties assessed in furtherance of Section 301(b) for reasons other than the acts, policies, or practices that were found to burden U.S. commerce in the underlying investigation.  Nor may USTR impose duties that are significantly disproportionate to the alleged burdens on U.S. commerce on which those duties are based, as USTR has done under List 3 and List 4.

41.     Section 301(b) actions may be modified when no longer appropriate.  *See* 19 U.S.C. § 2417(a)(1)(C).  But this authorization does not permit USTR to *increase* an existing remedy action.  Rather, the statute provides authority only to decrease, remove, or suspend the action.  *See* 19 U.S.C. § 2481(6).  USTR's attempt to assert its modification authority as a basis to impose new duties on additional goods is thus contrary to the statute.

42.     Plaintiff is, therefore, entitled to a declaratory judgment that the duties imposed on products of China covered by List 3 and List 4A are contrary to law and void *ab initio*.

## COUNT II:  APA VIOLATION

43.     Paragraphs 1 through 42 of this Complaint are incorporated herein by reference.

44.     The Administrative Procedure Act provides, in relevant part, that this Court invalidate any final agency action that is "arbitrary, capricious, an abuse of discretion, or

otherwise not in accordance with law," "in excess of statutory . . . authority," or without observance of procedure required by law."  5 U.S.C. § 706(2)(A), (C), (D).

45.    USTR's imposition of List 3 and List 4 duties more than 12 months after the initiation of the investigation is in excess of statutory authority and without observance of procedure required by law.

46.    USTR's imposition of List 3 and List 4 duties—for reasons unrelated to China's acts, policies, and practices related to technology transfer, intellectual property, and innovation as identified in the underlying investigation, and to an extent significantly disproportionate to the alleged burdens on U.S. commerce on which those duties are based —is in excess of statutory authority and is arbitrary, capricious, and an abuse of discretion.

47.    USTR's imposition of List 3 and List 4 duties was arbitrary and capricious because USTR did not provide meaningful opportunity to comment, failed to consider relevant factors when making its decision, and failed to draw a rational connection between the facts found and the choices made.

## **REQUEST FOR RELIEF**

For the foregoing reasons, Plaintiff respectfully requests that this Court:

1.    Declare the imposition and collection of List 3 and List 4A duties to be contrary to law and, therefore, void *ab initio*;

2.    Vacate the List 3 and List 4A actions;

3.    Order Defendants to refund, with interest as provided by law, all duties paid by Plaintiff in accordance with List 3 and List 4A;

4.      Permanently enjoin Defendants from collecting further duties on

importations by Plaintiff pursuant to List 3 and List 4A.

5.      Grant such other relief as the Court may deem just and proper.

Respectfully submitted,

/s/ Lynn M. Fischer Fox
Lynn M. Fischer Fox
J. David Park
Michael T. Shor
Henry D. Almond
Daniel R. Wilson
Leslie C. Bailey

*Counsel to Tesla, Inc.*

ARNOLD & PORTER KAYE SCHOLER LLP
601 MASSACHUSETTS AVENUE, N.W.
WASHINGTON, D.C. 20001
PHONE:  (202) 942-5601
FAX:  (202) 942-5999
Lynn.FischerFox@arnoldporter.com

Dated:  September 21, 2020

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to U.S. Court of International Trade Rule 4(b) and (h), I hereby certify that on

September 21, 2020, I caused copies of Plaintiff's Summons and Complaint to be served on the

following parties by certified mail, return receipt requested:

Attorney-In-Charge
International Trade Field Office
Commercial Litigation Branch
U.S. Department of Justice
26 Federal Plaza
New York, NY 10278

Attorney-In-Charge
Commercial Litigation Branch
U.S. Department of Justice
1100 L Street, NW
Washington, DC 20530

General Counsel Joseph L. Barloon
Office of the General Counsel
Office of the U.S. Trade Representative
600 17th Street, NW
Washington, DC 20006

Chief Counsel Scott K. Falk Office
of Chief Counsel
U.S. Customs & Border Protection
1300 Pennsylvania Ave., NW
Washington, DC 20229

/s/ Lynn Fischer Fox
Lynn Fischer Fox